JACK PRAETZELLIS (SBN 267765)
jpraetzellis@foxrothschild.com
CHRISTIN KIM (SBN 348256)
christinkim@foxrothschild.com
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, California 94104
Telephone:	(415) 364-5540
Facsimile:	(415) 391-4436

ELY GOLDIN (*pro hac vice* forthcoming)
egoldin@foxrothschild.com
FOX ROTHSCHILD LLP
980 Jolly Road, Suite 110
P.O. Box 3001
Bule Bell, Pennsylvania 19422
Telephone:	(610) 397-6500
Facsimile:	(610) 397-0450

Attorneys for Plaintiff
QUANERGY SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUANERGY SOLUTIONS, INC. f/k/a ROLISI, LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PRIME COMMUNICATIONS, INC. d/b/a PRIME SECURED, a Nebraska corporation,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, SPECIFIC PERFORMANCE, INJUNCTIVE, AND OTHER RELIEF; AND RELATED CLAIMS** |

Plaintiff, Quanergy Solutions, Inc. f/k/a Rolisi, LLC ("Plaintiff" or "Quanergy"), by and through its undersigned counsel, Fox Rothschild LLP, and pursuant to Rule 8 of the Federal Rules of Civil Procedure asserts the following claims against Defendant Prime Communications, Inc. d/b/a Prime Secured ("Defendant" or "Prime Secured") and in support thereof alleges as follows:

## PARTIES

1. Quanergy is a Delaware corporation with its principal place of business in San

Jose, California.

2. Prime Secured is a Nebraska corporation with its principal place of business in Elkhorn, Nebraska.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Section 1332 based on complete diversity of citizenship inasmuch as Quanergy is deemed a citizen of California (the state where the principal place of business is located) and Delaware (the state of incorporation) and Prime Secured is a citizen of Nebraska.

4. The amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendant Prime Secured because said defendant expressly consented to personal jurisdiction in California as set forth more fully below.

6. Furthermore, this Court has personal jurisdiction over Defendant Prime Secured because said defendant directed business activities toward and conducted business with parties within the State of California and the claims asserted herein arise from said activities.

7. Venue is proper in this Court under 28 U.S.C. Section 1391(b) because a substantial part of the events and injury occurred in the Northern District of California and, in the alternative, under Section 1391(b)(3). Further, venue is proper in this Court under the forum selection clause in the Agreement. *See* Ex. A § 12.8.

**DIVISIONAL ASSIGNMENT**

8. Assignment to the San Jose Division of this District is proper pursuant to Northern District of California Civil Local Rule 3-2(c) because a substantial part of the events that gave rise to Plaintiff's claims occurred in the County of Santa Clara.

**OPERATIVE FACTS**

A. **Quanergy-Prime Secured Systems Integrator Direct Purchase Agreement**

9. At all times relevant hereto, non-party Quanergy Systems, Inc. ("Quanergy OldCo")[1] was a manufacturer of LiDAR[1] sensors and related proprietary products, technology, materials and software ("Products").

---

[1] The term "LiDAR" stands for Light Detection and Ranging.

10. At all times relevant hereto, Prime Secured engaged was a provider of, *inter alia,* enterprise physical security services, commercial physical security services and managed IT services.

11. On or about June 30, 2021, Quanergy OldCo and Prime Secured entered into that certain Systems Integrator Direct Purchase Agreement (the "Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**.

12. Pursuant to the Agreement, Quanergy OldCo appointed Prime Secured as its non-exclusive Systems Integrator and reseller of Products in North America (the "Territory") for a term of three (3) years commencing on June 30, 2021, and ending on June 30, 2024 (the "Term").

13. Pursuant to the Agreement, Prime Secured agreed to purchase not less than 500 units of Products and other services during the Term.

14. Pursuant to the Agreement, Prime Secured agreed to use its best efforts to market, promote, sell and support the Products throughout the Territory.

15. Pursuant to the Agreement, Prime Secured agreed to maintain technological systems and capabilities needed to effectively market the Products to end users.

16. Pursuant to the Agreement, Prime Secured agreed to employ sufficient personnel with knowledge and training necessary to effectively sell the Products.

17. Pursuant to the Agreement, Prime Secured agreed to promptly pay for Products actually ordered.

**B. Purchase Order PO-67482**

18. The Agreement, at Section 3.1, provided that "SI shall purchase Quanergy Products by issuing a Purchase Order."

19. On June 30, 2022, Prime Secured issued and delivered purchase order No. PO-67482 (the "Purchase Order") to Quanergy OldCo. A true and correct copy of the Purchase Order is attached hereto as **Exhibit B**.

20. Pursuant to the Purchase Order, Prime Secured ordered 100 M8-1 POE sensors at a price of $288,800, 400 MQ-8 POE-Plus sensors at a price of $1,532,000, and 500 perpetual software licenses for the both sensors at a price of $792,000 for a total order of $2,612,800.

21. By sales order No. 105036 dated June 30, 2022 ("Sales Order"), Quanergy OldCo confirmed the Purchase Order and agreed to ship the Products by June 30, 2024. A true and correct copy of the Sales Order is attached hereto as **Exhibit C**.

22. The shipment date was consistent with the Agreement inasmuch as this was a backlog Purchase Order intended to ensure a steady supply of Products and avoid supply chain interruptions.

### C. Chapter 11 Bankruptcy Filing and §363 Sale

23. On December 12, 2022 ("Petition Date"), Quanergy OldCo filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under Docket No. 22-11305-CTG ("the Bankruptcy Case").

24. On December 13, 2022, the Bankruptcy Court issued an order (the "Bidding Procedures Order") approving bidding procedures in connection with the sale of Quanergy OldCo's assets in accordance with, *inter alia,* Section 363 of the Bankruptcy Code (the "Section 363 Sale").

25. On January 30, 2023, Plaintiff (then known as Rolisi, LLC) was determined to be the successful bidder (the "Successful Bidder") for the assets sold pursuant to the Section 363 Sale.

26. On or about February 1, 2023, and subject to Bankruptcy Court approval, Plaintiff entered into that certain Asset Purchase Agreement with Quanergy OldCo for the purchase of substantially all of the seller's tangible and intangible assets.

27. Pursuant to an order dated February 2, 2023 (the "§363 Sale Order"), the Bankruptcy Court approved the sale of substantially all of the tangible and intangible assets of Quanergy OldCo to Plaintiff.

28. On February 3, 2023, Plaintiff closed on the sale and, thus, acquired substantially of Quanergy OldCo's tangible and intangible assets.

29. Among other things, Plaintiff acquired all rights to the name "Quanergy".

30. On or about March 13, 2023, Plaintiff converted from a Florida limited liability company formerly known as Rolisi, LLC to a Delaware corporation known as Quanergy

Solutions, Inc.

31. Pursuant to, *inter alia,* applicable bankruptcy law, upon the filing of the voluntary petition under Chapter 11 of the Bankruptcy Code, including 11 U.S.C. § 365(d)(d), all executory contracts in effect as of the Petition Date, including the Agreement, remained in force until and unless rejected by the debtor-in-possession Quanergy OldCo upon approval of the Bankruptcy Court.

32. In connection with the Bankruptcy Case and pursuant to Order of the Bankruptcy Court, Quanergy OldCo assumed and assigned the Agreement, an unexpired executory contract, to Plaintiff.

**D. Defendant's Breach**

33. From the Petition Date through February 3, 2023, the sale date, Quanergy OldCo operated as a debtor-in-possession in accordance with Chapter 11 of the Bankruptcy Code.

34. From the Petition Date through February 3, 2023, the sale date, Quanergy OldCo processed and fulfilled customer orders.

35. From and after February 3, 2023, Prime Secured promised to promote Plaintiff's Products pursuant to the Agreement.

36. For example, and without limitation, in connection with the International Security Conference and Exposition ("ISC West") held in Las Vegas, Nevada between March 31, 2023 and April 4, 2023, Prime Secured advised that it had dedicated time to introduce Plaintiff's technology to prospective customers.

37. Furthermore, in connection with the Global Security Exchange conference ("GSX") held between September 11, 2023 and September 13, 2023 in Dallas Texas, Prime Secured advised that Plaintiff could "count on us coming to see you and bringing some clients as well."

38. Furthermore, on November 8, 2023, Prime Secured proposed a call to share Product information with prospective customers and "discuss the next steps in the sales plan".

39. On and after November 8, 2023, while Prime Secured expressed, on the surface, some interest and/or willingness to make prospective customer introductions, no meaningful effort was invested into the marketing or promotion of Plaintiff's technology and Products as required

by the Agreement.

40. Furthermore, as the June 30, 2024 deadline drew close, Steven Kanne ("Kanne"). Prime Secured's Chief Operating Officer advised on June 19, 2024 that Prime Secured was only willing to "sell product that has not been manufactured", i.e. new products, not Products that were ordered pursuant to the Purchase Order and Agreement.

41. The intent and effect of the June 19, 2024 was to advise that Prime Secured would not honor the obligations under the Purchase Order and Agreement.

42. At all times relevant hereto, Prime Secured conveyed its refusal to honor the Agreement, accept Products that were ordered, schedule and/or arrange for delivery, pay for the Products and/or discuss ongoing business relationship established under the Agreement.

43. The Agreement, at Section 7.2, sets forth procedures for termination.

44. Prime Secure never terminated the Agreement.

45. The Agreement remains in effect.

46. Any attempted cancellation or termination of a contractual obligation due to a bankruptcy filing was prohibited under applicable bankruptcy law, including under 11 U.S.C. § 365(e)(1), was without legal effect.

47. By reason of the aforesaid, Plaintiff suffered damages including, without limitation, lost profits, lost business opportunities, and other damages to be established at trial.

### FIRST CAUSE OF ACTION
### (Breach of Written Contract)

48. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 47 above and incorporates each allegation herein by reference.

### Breach by Repudiation

49. Pursuant to the Agreement and via the Purchase Order, Prime Secured ordered Products and licenses at a price of $2,612,800.

50. Pursuant to Section 3.3 of the Agreement, all sales are final.

51. Prime Secured willfully refused to proceed with the Purchase Order and breached its other obligations under the Agreement as set forth more fully herein.

52. Prime Secured breached the Agreement by refusing to adhere to its obligations under the Purchase Order and Agreement.

**Breach by Failure to Promote**

53. The Agreement between Prime Secured and Quanergy specified that Prime Secured would use its best efforts to market, promote, sell and support the products throughout the Territory. *See* Ex. A.

54. Since at least February 3, 2024, Prime Secured failed to market, promote, sell or support Quanergy's products throughout the Territory and, thus, failed to use its best efforts to market, promote, sell and support the products.

55. Sporadic promises to introduce prospective customers to Plaintiff at trade shows falls far short of what is required under the Agreement.

56. Prime Secured breached the Agreement by failing to use its best efforts to market, promote, sell and support the products throughout the Territory.

57. Pursuant to Section 3.6 of the Agreement, Prime Secured is liable for interest on any delinquent amounts owed to Quanergy at the lesser of (a) 1.5% per month or (b) the maximum rate permitted under California law.

58. Section 3.6 of the Agreement provides that Prime Secured shall be responsible for reasonable attorneys' fees and other costs incurred by Quanergy in connection with litigation to enforce the Agreement if Quanergy prevails.

59. As a direct and proximate result of the material breach of the Agreement by Prime Secured, Quanergy has sustained general, special and incidental damages in an amount not less than $2,612,800 plus interest at the lesser of (a) 1.5% per month or (b) the maximum rate permitted under California law, and Quanergy's reasonable attorneys' fees and costs.

60. Furthermore, as a direct and proximate result of Prime Secured's breaches, Quanergy has suffered, and will continue to suffer irreparable injury including, without limitation, a loss of market share and business opportunities arising from Prime Secured's failure to promote the Products.

///

## SECOND CAUSE OF ACTION

### (Breach of Contract)

### Failure to Fulfill Minimum Volume Requirement

61. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1-60 by reference as if more fully set forth herein.

62. Pursuant to the Agreement, the Initial Term was for a period of three (3) years.

63. Pursuant to Section 7.1, the Agreement absent written notice of termination issued at least sixty (60) days prior to the expiration of the Initial Term, the Agreement automatically renewed for an additional one-year period (the "Renewal Term").

64. Prime Secured did not issue a written notice of termination at least sixty (60) days prior the expiration of the Initial Term.

65. Prime Secured did not terminate the Agreement at least sixty (60) days prior to the expiration of the Initial Term.

66. The Agreement renewed and extended for an additional one (1) year commencing on June 30, 2024 and ending on June 30, 2025. *See* Ex. A.

67. The Agreement between Prime Secured and Quanergy provides that during the Renewal Term, Prime Secured is required to purchase at least 100 units of the Products during the Renewal Term.

68. To date, during the Renewal Term, Prime Secured has refused to discuss the purchase of additional Products.

69. Additionally, by acts and omissions set forth above, Prime Secured clearly and unequivocally repudiated its obligations under the Agreement and Purchase Order.

70. Prime Secured expressly and/or via repudiation, breached the Agreement by failing and/or refusing to purchase Products during the Renewal Term.

71. Pursuant to Section 3.6 of the Agreement, Prime Secured is liable for interest on any delinquent amounts owed to Quanergy at the lesser of (a) 1.5% per month or (b) the maximum rate permitted under California law.

72. Section 3.6 of the Agreement provides that Prime Secured shall be responsible for

reasonable attorneys' fees and other costs incurred by Quanergy in connection with litigation to enforce the Agreement if Quanergy prevails.

73. As a direct and proximate result of the material breach of the Agreement by Prime Secured, Quanergy has sustained general, special and incidental damages in an amount not less than $75,000 plus interest at the lesser of (a) 1.5% per month or (b) the maximum rate permitted under California law, and Quanergy's reasonable attorneys' fees and costs.

74. Furthermore, as a direct and proximate result of Prime Secured's breaches, Quanergy has suffered, and will continue to suffer irreparable injury including, without limitation, a loss of market share and business opportunities arising from Prime Secured's failure to promote the Products.

## THIRD CAUSE OF ACTION

**(Unjust Enrichment)**

75. Quanergy re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 74 above and incorporates each allegation herein by reference.

76. In the alternative to its claims for breach of contract, Quanergy asserts that Prime Secured derived a benefit from conduct that is unlawful, inequitable and fundamentally unjust to Quanergy's great harm and detriment.

77. Specifically, and without limitation, Prime Secured (i) gained valuable information regarding the features and capabilities of the Products and the differences between the Products and competing goods; and (ii) falsely led Quanergy to believe that Prime Secured would continue to market and promote Quanergy's products.

78. Prime Secured's conduct was unlawful, inequitable, and fundamental unjust.

79. Prime Secured's derived a direct and/or indirect economic benefit from its unlawful and inequitable conduct including, without limitation, increased market share within the Territory.

80. The retention of said benefit by Prime Secured is unjust and contrary to equitable principles.

81. As set forth above, Quanergy has suffered and continues to suffer harm for which legal remedies are inadequate.

82. Equity requires that Prime Secured account for all benefits (including profits) derived from its unlawful and unjust enrichment.

83. Equity requires that Prime Secured disgorge all benefit (including profits) derived from its unlawful and unjust enrichment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Quanergy prays for relief and judgment against each Defendant as follows:

A. For damages in an amount to be proven, but not less than $75,000;

B. Specific performance or one or more provisions in the Agreement;

C. Injunctive relief in the form of a decree enjoining, *inter alia,* ongoing violations of the Agreement for which monetary damages are inadequate;

D. Judgment in favor of Quanergy and against Prime Secured in an amount to be determined at trial, including, but not limited to, general damages, direct damages, consequential damages, compensatory damages and pre-judgment and post-judgment interest, as permitted by law;

E. An award of Quanergy's reasonable attorneys' fees, costs, and expenses pursuant to the Agreement and applicable law; and

F. Such other and further relief as the Court deems just, equitable and proper.

Dated:  December 3, 2024.          Respectfully submitted,

FOX ROTHSCHILD LLP


By */s/ Christin Kim*
  JACK PRAETZELLIS
  CHRISTIN KIM
  Attorneys for Plaintiff Quanergy Solutions, Inc.

**VERIFICATION**

I, Enzo Signore, am the Chief Executive Officer of Plaintiff Quanergy Solutions, Inc. f/k/a/ Rolisi, LLC in the within action, and make this verification for and on its behalf. I have read the foregoing COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, SPECIFIC PERFORMANCE, INJUNCTIVE, AND OTHER RELIEF; AND RELATED CLAIMS and know the contents thereof. The same is true of my own knowledge, except as to the matters stated therein on information and belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this verification was executed on December 2, 2024 at San Jose, California.

Signed by:

*Enzo Signore*

Enzo Signore

1

164985063.1

# JURY DEMAND

Plaintiff Quanergy Solutions, Inc. demands a trial by jury on all issues so triable herein.

Dated: December 3, 2024.    Respectfully submitted,

FOX ROTHSCHILD LLP

By /s/ Christin Kim
    JACK PRAETZELLIS
    CHRISTIN KIM
    Attorneys for Plaintiff Quanergy Solutions, Inc.